1  WILLIAM J. FLYNN, Cal. Bar No. 95371
   SCOTT M. DE NARDO, Cal. Bar No. 216749
2  NEYHART, ANDERSON, FLYNN & GROSBOLL
   44 Montgomery Street, Suite 2080
3  San Francisco, CA  94104
   TEL:  (415) 677-9440
4  FAX: (415) 677-9445
   Email: sdenardo@neyhartlaw.com
5
   Attorneys for Plaintiffs
6

7              **UNITED STATES DISTRICT COURT**

8          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

9                    **(San Jose Division)**

10

11 LOCAL 234 of the INTERNATIONAL      ) Case No.
   BROTHERHOOD OF ELECTRICAL          )
   WORKERS, AFL-CIO; INTERNATIONAL    ) C 07 4079
12 BROTHERHOOD OF ELECTRICAL          )
   WORKERS' UNION, LOCAL 234          ) **COMPLAINT &**
13 EDUCATIONAL AND TRAINING FUND;     ) **REQUEST FOR JURY TRIAL**
   ELECTRICAL WORKERS HEALTH &        )
14 WELFARE TRUST FUND;                )        **EMC**
   INTERNATIONAL BROTHERHOOD OF       )
15 ELECTRICAL WORKERS DISTRICT 9      )
   PENSION PLAN; and, KEN SCHERPINSKI, )
16 as Trustee of the Plaintiff Trusts and Business )
   Manager/Financial Secretary of I.B.E.W. Local )
17 234,                               )
                                      )
18         Plaintiffs,                )
                                      )
19    vs.                             )
                                      )
20 ADM ELECTRIC, INC., a California   )
   Corporation; and, G. DEAN ALLEMAND, an )
21 Individual,                        )
                                      )
22         Defendants.                )
                                      )
23                                    )
                                      )
24                                    )
                                      )
25                                    )

26

27

28

---

**COMPLAINT AND REQUEST FOR JURY TRIAL**                    0
Case No.

Plaintiffs allege:

I.

COMMON FACTUAL ALLEGATIONS

1.    Jurisdiction.  This is an action to collect unpaid contributions to multi-employer benefit plans pursuant to the terms of each plan, a collective bargaining agreement and a June 26, 2006 Settlement Agreement.  Jurisdiction is pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a), (e) and (g), 29 U.S.C. § 1145 and the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185.  Jurisdiction also exists pursuant to 28 U.S.C. § 1331.

2.    Venue.  Venue is appropriate in this District as the Plaintiff Trust is administered here (in Santa Clara County) and the breach took place in this district (in Monterey County); 29 U.S.C. § 1132(e)(2).

3.    Plaintiffs INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS' UNION, LOCAL 234 EDUCATIONAL AND TRAINING FUND; ELECTRICAL WORKERS HEALTH & WELFARE TRUST FUND; INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS DISTRICT 9 PENSION PLAN (hereafter the "Trusts"), are multi-employer employee benefit plan pursuant to ERISA, 29 U.S.C. § 1002(3), (37) and 29 U.S.C. § 1132(d)(1) and each is a jointly trusteed employee benefit trust pursuant to the LMRA, 29 U.S.C. § 186(c)(5).  Employers make contributions to the Trust pursuant to the requirements of their collective bargaining agreement with Plaintiff LOCAL 234 of the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO (hereafter "the Union" or "Local 340").  Plaintiff ELECTRICAL WORKERS HEALTH & WELFARE TRUST FUND is the authorized collection agent for each of the Trusts and other Funds.

4.    Plaintiff KEN SCHERPINSKI is a Trustee of each of the Trusts, a fiduciary of each Trust and the Business Manager of Local 234.

COMPLAINT AND REQUEST FOR JURY TRIAL                                        1
Case No.

5.    Defendant ADM ELECTRIC, INC. (hereinafter referred to as "ADM Electric") agreed to be bound to the terms and conditions of a collective bargaining agreement with the Plaintiff Local 234 (hereinafter referred to as "Local 234" or the "Union"). (Attached hereto as Exhibit "A" is a true and correct copy of a "Letter of Assent – A"). The "Letter of Assent – A" binds ADM Electric to the collective bargaining agreement. (Attached hereto as Exhibit "B" is a true and correct copy of the applicable collective bargaining agreement between the Monterey Bay California Chapter of the National Electrical Contractors Association and I.B.E.W. Local 234). The collective bargaining agreement requires the Defendant to submit monthly transmittals of hours worked and make monthly contributions to the Trusts or Funds for fringe benefits for the hours worked by covered employees. The collective bargaining agreement also requires the Defendant to be bound to the applicable Trust agreements.

6.    Defendant G. DEAN ALLEMAND ("Allemand") is the President of Defendant ADM Electric and agreed to be held personally liable for the actions of ADM Electric with respect to timely monthly transmittal and contribution submission, as well as for any breaches of the Settlement Agreement described in ¶ 7 below.

7.    Defendants ADM Electric and Allemand agreed to be bound to the terms and conditions of a Settlement Agreement executed on June 26, 2006 concerning prior delinquencies to the Plaintiff Trusts for the September 2003 through December 2003, February 2004, September 2004 through November 2004 and November 2005 reporting periods. (Attached hereto as Exhibit "C" is a true and correct copy of the Settlement Agreement executed by ADM Electric and Mr. Allemand). Among other things, the Settlement Agreement specified monthly payments of $300.00 for a period of twenty-four months with a balloon payment of $54,058.90 payable on or before July 1, 2008 (See, ¶ 2a and ¶ 2b of the Agreement), as well as the submission of "timely employer transmittals reports and payments to the Trust Fund Office" (See, ¶2c [sic] of the Agreement).

8.    Defendant ADM Electric is a business believed to have a California contractor's license #739839 and a California corporate license number C1984989. Defendant ADM Electric is engaged in the installation and testing of electrical wiring and electrical circuits business in Monterey County, California. Plaintiffs are informed and reasonably believe that Defendant ADM Electric is a fiduciary of the Trust pursuant to 29 U.S.C. § 1145, et seq.

9.    At all times material herein, the Defendants ADM Electric and Allemand have engaged in the construction industry in California and as such has been an "employer" "engaged in an industry or activity affecting commerce" within the meaning of 29 U.S.C. § 152 and 29 U.S.C. §§ 1002-1003.

10.    The Defendants have repeatedly underpaid or not paid the required contributions to the plans during the relevant period of the statute of limitations pursuant to the appropriate collective bargaining agreement and/or Trust agreement, as well as the June 26, 2006 Settlement Agreement. More specifically, the Defendants failed to submit contributions associated with the February 2007 reporting period and transmittal in the amount of $4,347.00 to the Health & Welfare Trust, resulting in a liquidated damages assessment of $434.70. Hours for the March 2007 reporting period for the Health & Welfare Trust were submitted on April 13, 2007 with a payment of $4,746.00 which was applied to the oldest outstanding principal (February 2007 contributions) on this new debt. The remaining $399.00 was applied to March 2007 hours, resulting in contributions of $4,347.00 and an additional liquidated damages assessment of $474.60 owed. ADM Electric failed to submit its transmittals and contributions for the Health & Welfare Trust for the April 2007 through the present reporting period, thereby resulting in an unknown amount of principal outstanding to the Health and Welfare Trust Fund, in addition to those amounts described above ($4,347.00 in principal and $909.30 in liquidated damages and the amounts owed pursuant to the Settlement Agreement). Moreover, ADM Electric failed to submit monthly transmittals to the Pension Plan for the months of February 2007 through the present, thereby resulting in additional unknown liability. These amounts

are in addition to the $61,258.90 owed as a result of the breach of the Settlement Agreement. Finally, ADM Electric also failed to submit monthly settlement payments in the amount of $300.00 pursuant to the June 26, 2006 Settlement Agreement for the months of August 2006, January 2007 through the present.

11.    Under the terms of the Electrical Workers Health and Welfare Trust Fund Agreement to which the Defendants agreed to be bound, an employer who fails to make timely contributions to the Trust for employee fringe benefits is liable to the Trust for all unpaid contributions, liquidated damages and interest on the unpaid principal, as well as attorneys' fees and collection costs. *See also*, 29 U.S.C. § 1132(g).

II.

FIRST CLAIM

(ERISA - 29 U.S.C. § 1145)

12.    Plaintiffs incorporate by reference and reallege paragraphs 1-11 as if set out in full.

13.    <u>Jurisdiction</u>.  This is an action to collect unpaid contributions found owing to a multi-employer benefit plan pursuant to the terms of the Trust agreement and the collective bargaining agreement.  Jurisdiction is pursuant to ERISA, 29 U.S.C. §§ 1132(a), (e) and (g) and § 1145.

14.    The Defendants' action constitutes a failure of an employer to make contributions to a multi-employer plan, as well as a breach of fiduciary duty owed pursuant to 29 U.S.C. § 1145.

15.    Plaintiffs are entitled to judgment for all unpaid contributions, liquidated damages, prejudgment interest and reasonable attorneys fees and costs pursuant to 29 U.S.C. § 1132(g)(2).

III.

SECOND CLAIM

(LMRA)

16.    Plaintiffs incorporate by reference and reallege paragraphs 1-11 and 13-15 as if set out in full.

COMPLAINT AND REQUEST FOR JURY TRIAL                                                4
Case No.

17.    <u>Jurisdiction</u>.  This is an action to enforce a collective bargaining agreement pursuant to 29 U.S.C. § 185(a).

18.    The Defendants' failure to pay contributions owing breached the collective bargaining agreement between the Defendants and the Union to the detriment of the Plaintiffs and Plaintiffs are entitled to damages, liquidated damages, interest, attorneys' fees and costs pursuant to the agreement.

IV.

THIRD CLAIM

(BREACH OF CONTRACT)

19.    Plaintiffs incorporate by reference and reallege paragraphs 1-11, 13-15 and 17-18 as if set out in full.

20.    The Defendants' failure to submit monthly transmittals of hours worked and contributions owed thereon, as well as the Defendants' failure to remain current with the monthly settlement payments amounts breached the Settlement Agreement, dated June 26, 2006 and Plaintiffs are entitled to damages, liquidated damages, interest, attorneys' fees and costs pursuant to the Settlement Agreement.

V.

PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray judgment as follows:

1.    For $61,258.90 owed in principal, liquidated damages and attorneys' fees and costs as a result of the Defendants' breach of the June 26, 2006 Settlement Agreement.

2.    For an Order requiring the Defendants to submit any and all missing monthly transmittals and any principal, liquidated damages and interest owed thereon.

3.    For unpaid principal of $4,347.00 and further unknown amounts based upon covered hours worked but not yet reported according to proof,

**COMPLAINT AND REQUEST FOR JURY TRIAL**                                                                          5
Case No.

1    4.    For liquidated damages of $909.30 and further unknown amounts based upon covered

2  hours worked but not yet reported according to proof,

3    5.    For prejudgment interest according to proof,

4

5    6.    For such equitable relief as this court deems just and proper,

6    7.    For reasonable attorneys fees and costs of suit (currently estimated to be

7  approximately $2,500.00), and any further amounts according to proof, and

8    8.    For such other and further relief as this court deems just and proper.

9                              Respectfully submitted,

10  Dated: August 7, 2007

11
                              _____
12                              Scott M. De Nardo
                              NEYHART, ANDERSON, FLYNN & GROSBOLL
                              Attorneys for Plaintiffs

1

2

## JURY TRIAL DEMAND

3       Plaintiffs hereby demand trial by jury.

4   Dated: August 7, 2007.

5                                               _____
                                                Scott M. De Nardo
6                                               Attorney for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

## LETTER OF ASSENT – A

~ In signing this letter of assent, the undersigned firm does hereby authorize [1]   Monterey Bay California Chapter

N.E.C.A., Inc.   as its collective bargaining representative for all matters contained in or pertaining to the

current and any subsequent approved [2]   Inside   labor agreement between the

[1] Monterey Bay California Chapter N.E.C.A., Inc.   and Local Union [3] 234   IBEW.

In doing so, the undersigned firm agrees to comply with, and be bound by, all of the provisions contained in said current and subsequent approved labor agreements. This authorization, in compliance with the current approved labor agreement, shall become effective on the [4] 27 day of

Oct   1997. It shall remain in effect until terminated by the undersigned employer giving written notice to the

[3] Monterey Bay California Chapter N.E.C.A., Inc.   and to the Local Union at least one hundred

fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement.

The Employer agrees that if a majority of its employees authorize the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent for all employees performing electrical construction work within the jurisdiction of the Local Union on all present and future jobsites.

In accordance with Orders issued by the United States District Court for the District of Maryland on October 10, 1980, in Civil Action HM-77-1302, if the undersigned employer is not a member of the National Electrical Contractors Association, this letter of assent shall not bind the parties to any provision in the above-mentioned agreement requiring payment into the National Electrical Industry Fund, unless the above Orders of Court shall be stayed, reversed on appeal, or otherwise nullified.

SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW

ADM Electric Inc.
[5] Name of Firm

563 Arlene Drive
Street Address/P.O. Box Number

Watsonville, CA   95076
City, State (Abbr.) Zip Code

[6] Federal Employer Identification No.:   77-0460653

**APPROVED**
INTERNATIONAL OFFICE — I. B. E. W.

DEC 03 1997

J. J. Barry, President
This approval does not make the
International a party to this agreement

| | |
|---|---|
| SIGNED FOR THE EMPLOYER | SIGNED FOR THE UNION [3] 234   IBEW |
| BY [7] _(original signature)_ | BY [7] _(original signature)_ |
| NAME [8] G. Dean Allemand | NAME [8] Ronald D. Carpenter |
| TITLE/DATE   President   10/15/97 | TITLE/DATE   Business Manager/ 10-15-97 |

INSTRUCTIONS (All items must be completed in order for assent to be processed)

[1] NAME OF CHAPTER OR ASSOCIATION
Insert full name of NECA Chapter or Contractors Association involved.

[2] TYPE OF AGREEMENT
Insert type of agreement. Example: Inside, Outside Utility, Outside Commercial, Outside Telephone, Residential, Motor Shop, Sign, Tree Trimming, etc. The Local Union must obtain a separate assent to each agreement the employer is assenting to.

[3] LOCAL UNION
Insert Local Union Number.

[4] EFFECTIVE DATE
Insert date that the assent for this employer becomes effective. Do not use agreement date unless that is to be the effective date of this Assent.

[5] EMPLOYER'S NAME & ADDRESS
Print or type Company name & address.

[6] FEDERAL EMPLOYER IDENTIFICATION NO.
Insert the identification number which must appear on all forms filed by the employer with the Internal Revenue Service.

[7] SIGNATURES
[8] SIGNER'S NAME
Print or type the name of the person signing the Letter of Assent. International Office copy must contain actual signatures-not reproduced-of a Company representative as well as a Local Union officer.

A MINIMUM OF FIVE COPIES OF THE JOINT SIGNED ASSENTS MUST BE SENT TO THE INTERNATIONAL OFFICE FOR PROCESSING. AFTER APPROVAL, THE INTERNATIONAL OFFICE WILL RETAIN ONE COPY FOR OUR FILES, FORWARD ONE COPY TO THE IBEW DISTRICT VICE PRESIDENT AND RETURN THREE COPIES TO THE LOCAL UNION OFFICE. THE LOCAL UNION SHALL RETAIN ONE COPY FOR THEIR FILES AND PROVIDE ONE COPY TO THE SIGNATORY EMPLOYER AND ONE COPY TO THE LOCAL NECA CHAPTER.
IMPORTANT: These forms are printed on special paper and no carbon paper is required for duplicate copies. Remove from the pad enough copies of the form for a complete set and complete the form.

IBEW FORM 302 REV. 6/94

EXHIBIT B

INSIDE AGREEMENT


Between


International Brotherhood of Electrical Workers

Local Union 234


and


Monterey Bay California Chapter

of

National Electrical Contractors Association


Effective May 29, 2006 – May 25, 2008

# TABLE OF CONTENTS

**Basic Principles**   1

**Article I, Standard CIR/Effective Date/Changes/Grievances/Disputes**   1
    1.01 Effective Date   1
    1.02 Change or Termination of Agreement   1
    1.03 Change or Supplement to Agreement   2
    1.04 Work Stoppage   2
    1.05 Labor-Management Committee   2
    1.06 Grievances   2
    1.07 Labor-Management Committee Reaching an Agreement   2
    1.08 Council on Industrial Relations   2
    1.09 Continuation of Existing Provisions   2
    1.10 Grievance Time Limit   2

**Article II, Employer Rights – Union Rights**   3
    2.01 Employees with C-10   3
    2.02 Favored Nations   3
    2.03 Union   3
    2.04 Union Security   3
    2.05 Management Rights   3
    2.06 Employer Qualifications   3
    2.07 RMO & RME*   4
    2.08 Work Preservation Clause   4
    2.09 Insurance   4
    2.10 Fringe Benefit Remedy   5
    2.11 Surety Bond   5
    2.12 Picket Line   5
    2.13 Loaning of Employees   5
    2.14 Working Contractor   5
    2.15 Stewards   6
    2.16 Union Access   6
    2.17 Subcontracting and Piece Work   7
    2.18 Annulment/Subcontracting   7
    2.19 Union Label   7
    2.20 Wage or Price Freeze   7
    2.21 Effective Rate Change   7
    2.22 Distribution of Wages on Fringe Benefits   8
    2.23 Non-Resident Employees: (Portability)   8
    2.24 Foreman Call-Out   8

**Article III, Hours–Wage Payments–Apprentices–Working Conditions**   8
    3.01 Work Day and Workweek   8
    3.02 Meal Period   9
    3.03 Overtime Reporting   10
    3.04 Wages   10
    3.05 Starting Time Adjustment   12
    3.06 Payday – Termination Slips   12
    3.07 Dues Check Off   13

3.08  General Provisions ............................................................. 13
3.09  Scope ................................................................................. 14
3.10  Holidays ............................................................................ 14
3.11  Labor Day .......................................................................... 15
3.12  Show Up Pay ..................................................................... 15
3.13  Prevailing Rate Work ........................................................ 15
3.14  Hightime ............................................................................ 16
3.15  Hazard Pay ....................................................................... 16
3.16  Shift Work .......................................................................... 16
3.17  Foreman ............................................................................ 17
3.18  Tools – Employee Provided .............................................. 17
3.19  Tools – Employer Provided ............................................... 18
3.20  Workmanship ..................................................................... 19
3.21  Welding .............................................................................. 19
3.22  Cable Splicing ................................................................... 19
3.23  Paid Parking ...................................................................... 20
3.24  Transportation ................................................................... 20
3.25  Truck Signs ....................................................................... 20
3.26  Safety ................................................................................ 20
3.27  Off Shore Drilling ............................................................... 20
3.28  Tunnel, Tube, Caisson and Bore Work ............................. 21

**Article IV, Referral Procedure** ..................................................... 22
4.01  Referral Understanding ..................................................... 22
4.02  Source of Referral ............................................................. 22
4.03  Employer Right to Reject ................................................... 22
4.04  Selection and Referral of Applicants for Employment ...... 22
4.05  Referral Register ............................................................... 22
4.06  Temporary Employees ....................................................... 22
4.07  Notification of Temporary Employees ............................... 23
4.08  "Normal Construction Labor Market" ................................ 23
4.09  "Resident" .......................................................................... 23
4.10  "Examination" .................................................................... 23
4.11  Out of Work List ................................................................ 23
4.12  Out of Work List Renewal .................................................. 23
4.13  Work of Forty Hours or Less ............................................. 23
4.14  Referral Procedure ............................................................ 23
4.15  Exceptions ......................................................................... 24
4.16  Appeals Committee ........................................................... 24
4.17  Function of the Appeals Committee ................................. 24
4.18  Inspection of Referral Procedure Records ....................... 24
4.19  Posting of the Referral Procedure ................................... 24
4.20  Referral of Apprentices ..................................................... 24

**Article V, Standard Inside Apprenticeship Language** ................. 24
5.01  Joint Apprenticeship and Training Committee (JATC) ...... 24
5.02  Members of the JATC ........................................................ 25
5.03  Duties of the JATC ............................................................ 25
5.04  Duties of Subcommittees ................................................. 25
5.05  Training Director ................................................................ 25

- ii -

5.06  Transfer of Apprentices                                            25
5.07  Entrance to the Program                                            25
5.08  Number of Apprentices                                              26
5.09  Attempt to Supply Apprentices                                      26
5.10  Unindentured Workers                                               26
5.11  Benefits for Apprentices                                           26
5.12  Apprentice Ratio                                                   26
5.13  Supervision of Apprentices                                         27
5.14  Completion of Apprenticeship                                       27
5.15  Joint Apprenticeship and Training Trust Fund Agreement             27
5.16  Education and Training Trust Fund Contributions                    27

**Article VI, Vacation**                                                **27**
6.01  Vacation                                                          27

**Article VII, Health and Welfare Plan**                                **28**
7.01  Health and Welfare Trust Fund Contributions                       28

**Article VIII, Educational and Training Fund**                         **28**
8.01  Educational and Training Fund Contributions                       28

**Article IX, Pension Plan**                                            **29**
9.01  Pension Plan Contributions                                        29

**Article X, NEBF Agreement**                                           **30**
10.01  NEBF Agreement                                                   30

**Article XI, Industry Fund**                                           **30**
11.01  Industry Fund                                                    30

**Article XII, Monterey Bay Area Labor Management Cooperative Fund**     **31**
12.01  Purpose of Fund                                                  31
12.02  Function of Fund                                                 31
12.03  Contribution Amount                                             31
12.04  Failure to Make Contributions                                   31

**Article XIII, Administrative Maintenance Fund**                       **32**
13.00  Administrative Maintenance Fund                                  32

**Article XIV, Substance Abuse**                                        **32**
14.01  Drug and Alcohol Policy                                          32

**Article XV, Transmittal Forms**                                       **32**
15.01  Transmittal Form                                                 32
15.02  Rounding                                                         33
15.03  Failure to Pay Benefit                                          33

**Article XVI, National Labor Management Cooperation Committee**    **33**
    16.01  Establishment of the Trust    33
    16.02  National Labor Management Cooperative Committee    34
    16.03  Contribution Amount    34
    16.04  Delinquent Payment    34

**Article XVII, Savings Clause**    **34**
    17.01  Savings Clause    34

**Inside Agreement**    **35**
   Signatures    35

## INSIDE AGREEMENT

Agreement by and between the Monterey Bay California Chapter of the National Electrical Contractors Association (NECA) and Local Union No. 234, IBEW.

It shall apply to all firms who sign a Letter of Assent to be bound by the terms of this Agreement.

As used hereinafter in this Agreement, the term "Chapter" shall mean the Monterey Bay California Chapter of NECA and the term "Union" shall mean Local Union No. 234, IBEW.

The term "Employer" shall mean an individual firm who has been recognized by an assent to this Agreement.

## BASIC PRINCIPLES

The National Electrical Contractors Association and the International Brotherhood of Electrical Workers having common and sympathetic interest in the Electrical Industry and wishing to further the use of electricity in a manner safe to life and property while protecting the legitimate interests of both the public and the people engaged in the industry, realize that a system of maintaining harmonious relations and continuous peace between the Employer and the Employee is necessary, and in good faith agree to adjust any differences by rational and common sense methods.

The Employer and the Union recognize the desirability of providing continued employment in the Electrical Construction Industry and the necessity of having available at all times, a supply of competent Employees with experience and training in the various types of work covered by this Agreement.

In accordance with the Federal Government Executive Orders, the Fair Employment Practices Act of the State of California, and other applicable laws, the parties to this Agreement are obligated not to discriminate against Employees or applicants for employment because of race, religion, color, age, sex, creed, national origin or disability.

Now, therefore, in consideration of the mutual promises and agreements herein contained, the parties hereto do agree as follows:

### ARTICLE I
### STANDARD CIR
### EFFECTIVE DATE/ CHANGES/GRIEVANCES/DISPUTES

**EFFECTIVE DATE:**
**Section 1.01.** This Agreement shall take effect May 29, 2006, and shall remain in effect until May 25, 2008 unless otherwise specifically provided for herein. It shall continue in effect from year to year thereafter, from May 26 through May 25 of each year, unless changed or terminated in the way later provided herein.

**CHANGES:**
**Section 1.02(a).** Either party or an Employer withdrawing representation from the Chapter or not represented by the Chapter, desiring to change or terminate this Agreement must provide written notification at least 90 days prior to the expiration date of the Agreement or any anniversary date occurring thereafter.
(b)  Whenever notice is given for changes, the nature of the changes desired must be specified in the notice, or no later than the first negotiating meeting unless mutually agreed otherwise.

(c) The existing provisions of the Agreement, including this Article, shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

(d) Unresolved issues or disputes arising out of the failure to negotiate a renewal or modification of this agreement that remain on the 20th of the month preceding the next regular meeting of the Council on Industrial Relations for the Electrical Contracting Industry (CIR) may be submitted jointly or unilaterally to the Council for adjudication. Such unresolved issues or disputes shall be submitted no later than the next regular meeting of the Council following the expiration date of this agreement or any subsequent anniversary date. The Council's decisions shall be final and binding.

(e) When a case has been submitted to the Council, it shall be the responsibility of the negotiating committee to continue to meet weekly in an effort to reach a settlement on the local level prior to the meeting of the Council.

(f) Notice of a desire to terminate this Agreement shall be handled in the same manner as a proposed change.

**Section 1.03.** This Agreement shall be subject to change or supplement at any time by mutual consent of the parties hereto. Any such change or supplement agreed upon shall be reduced to writing, signed by the parties hereto, and submitted to the International Office of the IBEW for approval, the same as this Agreement.

**Section 1.04.** There shall be no stoppage of work either by strike or lockout because of any proposed changes in this Agreement or dispute over matters relating to this Agreement. All such matters must be handled as stated herein.

**GRIEVANCES/DISPUTES:**

**Section 1.05.** There shall be a Labor-Management Committee of three representing the Union and three representing the Employers. It shall meet regularly at such stated times as it may decide. However, it shall also meet within 48 hours when notice is given by either party. It shall select its own Chairman and Secretary. The Local Union shall select the Union representatives and the Chapter shall select the management representatives.

**Section 1.06.** All grievances or questions in dispute shall be adjusted by the duly authorized representative of each of the parties to this Agreement. In the event that these two are unable to adjust any matter within 48 hours, they shall refer the same to the Labor-Management Committee.

**Section 1.07.** All matters coming before the Labor-Management Committee shall be decided by a majority vote. Four members of the Committee, two from each of the parties hereto, shall be a quorum for the transaction of business, but each party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting.

**Section 1.08.** Should the Labor-Management Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding.

**Section 1.09.** When any matter in dispute has been referred to conciliation or arbitration for adjustment, the provisions and conditions prevailing prior to the time such matters arose shall not be changed or abrogated until agreement has been reached or a ruling has been made.

**Section 1.10.** Any grievance not brought to the attention of responsible opposite parties to this Agreement in writing within 20 working days of its occurrence shall be deemed to no longer exist. No committee member shall sit on a case in which he is directly involved.

## ARTICLE II

### Employer Rights – Union Rights

### 2.01 EMPLOYEES WITH C-10
(a) No Employee, employed by or available for employment by Employers covered by this Agreement, shall himself become a contractor for the performance of any electrical work. Any employee that possesses a C-10 license shall deactivate the license.

(b) Employee Definition: Anyone performing work that is covered by the Scope of this Agreement shall be considered as an Employee under this Agreement.

### 2.02 FAVORED NATIONS
The Union agrees that if, during the life of this Agreement, it grants to any other Employer in the Electrical Contracting Industry on work covered by the Agreement any better terms or conditions than those set forth in this Agreement, such better terms or conditions shall be made available to the Employer under this Agreement and the Union shall immediately notify the Employer of any such concession.

### 2.03 UNION
The Employer recognizes the Union as the sole bargaining agent of the Employees covered under this Agreement.

### 2.04 UNION SECURITY
All Employees covered by the terms of the Agreement shall be required to become and remain members of the Union as a condition of employment from and after the eighth (8) calendar day following the date of their employment or the effective date of this Agreement, whichever is later.

### 2.05 MANAGEMENT RIGHTS
The Union understands the Employer is responsible to perform the work required by the owner. The Employer shall, therefore, have no restrictions except those specifically provided for in the collective bargaining agreement, in planning, directing and controlling the operation of all his work, in deciding the number and kind of employees to properly perform the work, in hiring and laying off employees, in transferring employees from job to job within the Local Union's geographical jurisdiction, in determining the need and number as well as the person who will act as Foreman, in requiring all employees to observe the Employer's and/or owner's rules and regulations not inconsistent with this Agreement, in requiring all employees to observe all safety regulations, and in discharging employees for proper cause.

### 2.06 EMPLOYER QUALIFICATIONS
(a) Certain qualifications, knowledge, experience and financial responsibilities are required of everyone desiring to be a signatory party to this Agreement. Therefore, an Employer, by signing this Agreement certified that it is a person, firm, partnership or corporation whose principal business is electrical contracting and who possesses the following qualifications and possesses documentary evidence substantiating the following:
   (1) Maintains a legal place of business, which means an established office and shop, displaying a sign stating the nature of the business, conducts the ordinary tasks of operating his business and maintains a telephone and complete payroll records.
   (2) Agrees to comply with all fringe benefit trust provisions.

(b) The Union shall refer job applicants at the request of the Employer to either shop or job.

(c) The Employer shall furnish, as required, sufficient job payroll data in order that prevailing wages may be properly certified under Davis-Bacon and similar acts.

## 2.07 RESPONSIBLE MANAGING OFFICER & RESPONSIBLE MANAGING EMPLOYEE*

Any signatory party or firm that becomes RMO or RME to any other person, firm, or corporation that does not immediately upon demand, become signatory to this Agreement, shall upon written notice by the Union immediately withdraw as RMO or RME. Failure to withdraw shall be cause for cancellation of the individual Employer's Agreement.

*(As defined in Chapter 9, Article 5, of the Business & Professions Code, State of California Contractors License Law.)

## 2.08 WORK PRESERVATION CLAUSE

(a) In order to protect and preserve for the Employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform any on-site construction work of the type covered by this Agreement, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer, through its officers, directors, partners or stockholders, exercises either directly or indirectly, management, control or majority ownership, the terms and conditions of this Agreement shall be applicable to all such work. All charges of violations of this section shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

(b) As a remedy for violations of this section, the Labor-Management Committee, the Council on Industrial Relations for the Electrical Contracting Industry and/or an independent arbitrator, as the case may be, are empowered, in their discretion and at the request of the Union, to require an Employer to (1) pay to affected Employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such Employees as a result of violations, and (2) pay into the affected joint trust funds established under this Agreement any delinquent contributions to such funds which have resulted from the violations. Provisions for this remedy herein does not make such remedy the exclusive remedy available to the Union for violation of this section; nor does it make the same or other remedies unavailable to the Union for violations of other sections or other articles of this Agreement.

(c) If, as a result of violations of this section, it is necessary for the Union and/or the Trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with subsection (b) above, or to defend an action which seeks to vacate award, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or fund Trustees plus costs of the litigation, which have resulted from the bringing of such court action.

## 2.09 INSURANCE

For all Employees covered by this Agreement, the Employer shall carry Workman's Compensation Insurance, with a company authorized to do business in this State, Social Security, and such other protective insurance as may be required by the laws of this State, and shall furnish satisfactory proof of such to the Union. He shall also make all necessary contributions required by law.

## 2.10 FRINGE BENEFIT REMEDY

(a) The failure of an individual Employer to comply with the provisions set forth covering contributions to the funds required by this Agreement shall also constitute a breach of the labor agreement. As a remedy for such violation, the Labor-Management Committee and/or the form of arbitration provided for in this Agreement, as the case may be, are empowered at the request of the Union to require an Employer to pay into the affected joint trust funds established under this Agreement, any delinquent contributions to such funds which have resulted from the violation.

(b) If, as a result of violations of this section, it is necessary for the Union and/or the Trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with subsection (a) above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountant's and attorneys' fees incurred by the Union and/or Fund Trustees, plus the cost of the litigation which have resulted from the bringing of such action.

(c) Individual Employers who fail to remit as provided shall be additionally subject to having this Agreement terminated after three (3) business days written notice being served by the Union, provided the individual Employer fails to show satisfactory proof that the required payments have been paid.

## 2.11 SURETY BOND

Any contractor employing up to five (5) employees covered by this Agreement will have to post a seventy-five hundred dollar ($7,500) bond or cash; any contractor employing from five (5) to ten (10) employees covered by this Agreement will have to post a ten thousand dollar ($10,000) bond or cash; any contractor employing more than ten (10) employees covered by this Agreement will have to post a fifteen thousand dollar ($15,000) bond or cash. Said bond shall be presented to the IBEW Union office within five (5) business days following the referral of the first employee and in a form acceptable to the parties to this Agreement, and guarantee payment of current, delinquent and future wages and/or fringes provided for in this Agreement. Certification of participation in the NECA West Payroll and Fringe Benefit Guarantee Trust Fund will satisfy this bond requirement. The Union office shall forward a copy of all bonds posted to the NECA Chapter office.

## 2.12 PICKET LINE

It shall not be considered a violation of this Agreement, nor shall any Employee be discharged by the Employer if he recognizes another Labor Union's primary picket line which is sanctioned by the local Central Labor Council, or the Building Trades Council. Should Employees leave the job where there is such sanctioned picket line, they shall carefully put away all tools, material, and equipment or other property of the Employer in a safe manner. The Union will be financially responsible for any loss to the Employer by Employees for neglect in carrying out this provision, but only when a safe place is provided for such property by the Employer. The Union will provide verbal confirmation of the sanction to the NECA Chapter within two (2) business days after an inquiry has been made regarding active pickets by any signatory party.

## 2.13 LOANING OF EMPLOYEES

The Employer shall not loan, or cause to be loaned, any of his Employees to any other Employer.

## 2.14 WORKING CONTRACTOR

One (1) Employer member of the firm shall be allowed to work with the tools, provided the Employer:

(a) Applies to the Local Union for an application. The Union shall notify the Chapter of the one (1) Employer member of the firm who may work with the tools. Upon receipt of such notification, this working member cannot be changed without sixty (60) days prior written notice to the Union and the Chapter.

(b) Any and all work, as defined under the scope of this Agreement performed outside of regular working hours shall not be performed by the designated working member of the firm, if an employee exists, except in the case of an emergency. (Danger to life, limb or loss of property).

(c) The Employer hereby agrees that he has an obligation to provide gainful employment for his Employees prior to the Employer performing any work.

(d) Circumventing the intent of "Employer" shall not be permitted by the pretense of ownership by an immediate member of the family or by other means. He must be a journeyman of the trade or be included on the State License of the firm. He shall provide proof of ownership of at least twenty-five percent (25%) of the business to the satisfaction of the Union.

(e) The working Employer shall not be permitted to work behind sanctioned lawful picket lines in order to perform work that comes under the scope of the Agreement.

## 2.15 STEWARDS

(a) The Union shall have the right to appoint a Steward at any shop or on any job where Employees are employed under the terms of this Agreement. Such Stewards shall see that this Agreement and working conditions are observed, and he shall be allowed sufficient time to perform these duties during regular working hours. The Steward shall be offered the opportunity to be included in the crew when overtime is worked, the same as other Employees.

(b) The Steward shall be notified prior to starting all premium time work on the job(s) under his area of concern, including but not limited to overtime, hightime, etc. The daily makeup of each crew on any job with more than one (1) crew shall be made available to the Steward.

(c) Under no circumstances shall an Employer dismiss or otherwise discriminate against an Employee for making a complaint or giving evidence with respect to an alleged violation of any provision of the Agreement.

(d) The Union shall notify the Employer of the name of the Steward(s). The Employer shall not remove, transfer, or dismiss any Steward from a shop or job site where a Steward has been appointed, except for just cause, unless mutually agreed upon with the Business Manager. JOB SITE means any location where work is being performed under the terms and conditions of this Agreement.

(e) Employers shall cooperate with the Steward in adjusting grievances and jurisdictional disputes, and in seeing that all overtime is equally distributed among the men on the job or in the shop insofar as is practical.

(f) The Steward shall be notified of all new hires, and all terminations as set forth below:
    (1) Shop Steward - On the same day when a man quits, is laid off, or is discharged.
    (2) Job Steward - Prior to the issuance of the termination check.

(g) The appointment of a second (2nd) Steward may be made on any job after thirty (30) men are working on the job.

## 2.16 UNION ACCESS

(a) Time cards indicating the amount of time per job and the date worked shall be maintained by the Employer and shall be made available to the Business Manager or the Union for the purpose of checking the amount of time worked by Employees.

(b) The Business Manager or his assistant, shall have the right to visit the Employer's place of business during normal business hours to inspect the books of the Employer as they deal with the time records and methods of pay and expenses applying to Employees covered by this Agreement.

(c) The Business Manager of the Union or his assistant shall be allowed reasonable access to any shop or job where Employees are employed under the terms of this Agreement.

## 2.17 SUBCONTRACTING AND PIECE WORK

(a) No Employer shall directly or indirectly, or by any subterfuge, sublet, or contract with any Employee, all or any part of the labor services required by any contract of such Employer.

(b) There shall be no piece-work, and no Employer, Employees or other agents shall give or accept, directly or indirectly, any rebate of wages. No Employer shall directly or indirectly or by any subterfuge, sublet or contract with any Employee to perform any labor or provide any services required of an Employer except as provided herein. No Employer shall sublet, borrow, or contract with any Employee for the use of any tools, equipment or vehicle.

## 2.18 ANNULMENT/SUBCONTRACTING

The Local Union is a part of the International Brotherhood of Electrical Workers and any violation or annulment by an individual Employer of the approved Agreement of this or any other Local Union of the IBEW, other than violations of Paragraph 2 of this Section, will be sufficient cause for the cancellation of his Agreement by the Local Union after a finding has been made by the International President of the Union that such a violation or annulment has occurred.

The subletting, assigning, or transfer by an individual Employer of any work in connection with electrical work to any person, firm or corporation not recognizing the IBEW or one of its Local Unions as the collective bargaining representative of his employees on any electrical work in the jurisdiction of this or any other Local Union to be performed at the site of the construction, alteration, painting or repair of a building, structure or other work, will be deemed a material breach of this Agreement.

All charges of violations of Paragraph 2 of this Section shall be considered as a dispute and shall be processed in accordance with the provision of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

## 2.19 UNION LABEL

The Employer agrees that he will not require any Employee to work on any products, equipment or materials which do not bear a union label or are manufactured under substandard wages and/or conditions. Any such requirement shall be considered a grievance as hereinbefore provided for.

## 2.20 WAGE OR PRICE FREEZE

All or any part of any negotiated wage increase agreed to by the parties that is prohibited or deferred by a Governmental wage or price freeze, shall become effective immediately following the day the wage or price freeze is lifted.

## 2.21 EFFECTIVE RATE CHANGE

The parties hereby agree that due to difficulties encountered in the reporting process, all changes in the reporting shall become effective on the first (1st) day of the pay week of the month that the change becomes effective.

## 2.22 DISTRIBUTION OF WAGES ON FRINGE BENEFITS

It is mutually agreed that any portion of the agreed wage rate change may be added to any of the fringe benefits that exist as stipulated by the membership of I.B.E.W. Local Union No. 234.

## 2.23 NON-RESIDENT EMPLOYEES: *(Portability)*

An Employer signatory to a collective bargaining agreement or to a letter of assent to an agreement with another IBEW Local Union, who signs an assent to this Agreement, may bring up to four bargaining unit employees employed in that Local Union's jurisdiction into this Local's jurisdiction and up to two bargaining unit employees per job from that Local's jurisdiction to this Local's jurisdiction for specialty or service and maintenance work. All charges of violations of this section shall be considered as a dispute and shall be processed in accordance with the provisions of this agreement for the handling of grievances with the exception that any decision of a local labor-management committee that may be contrary to the intent of the parties to the National Agreement on Employee Portability, upon recommendation of either or both the appropriate IBEW International Vice President or NECA Regional Executive Director, is subject to review, modification, or rescission by the Council on Industrial Relations.

## 2.24 FOREMAN CALL-OUT

The Employer shall have the right to call Foremen by name provided:

(1)    The Employer shall notify the business manager, in writing of the name of the individual who is to be requested for employment as a Foreman.  Upon such request, the business manager shall refer said Foreman provided the name appears on the highest priority group. If no Foremen are on the highest priority list, (Book One), Foremen shall be referred from Book Two.

(2)    When an Employee is called as a Foreman, he must remain as a Foreman or must receive a reduction in force.

(3)    Requested individuals shall possess a valid CPR certificate.

(4)    Requested individuals shall have passed a recognized Industry Foremanship class after January 1, 1995 or shall be able to document a minimum of one (1) year's experience working as a Foreman in the Electrical Contracting Industry.

Requested individuals, Employees and/or Employers who falsify information or violate any eligibility requirement may be considered ineligible and no longer be able to participate in this program.

### ARTICLE III

### Hours-Wage Payments-Apprentices-Working Conditions

## 3.01 WORK DAY AND WORKWEEK

(a) Eight (8) hours shall constitute a days work from 8:00 a.m. to 12:00 noon, and from 12:30 p.m. to 4:30 p.m. on Monday through Friday.  The Employer, in recognition of past practices, agrees that up to twenty-five percent (25%) of his work crew may, by making prearrangement (3 work days prior notification) take the Friday off.  A paid rest break shall be provided to all employees approximately midway through the morning and afternoon work periods.  The rest periods shall be no more than ten (10) minutes in length and are to be taken at his or her workstation.  Additional rest periods shall be furnished if work continues outside of the normal workday.

(b) The first two (2) hours of overtime that is worked <u>contiguous or in conjunction</u> with the scheduled work day, either before or after, and up to eight (8) hours on Saturday between 8:00 a.m. and 4:30 p.m. may be worked at the time and one-half (1 ½) rate of pay.

(c) Time worked outside of (a) and (b) above and on Sundays and Holidays as set forth in 3.10 shall be paid at double (2x) rate of pay.

(d) An Employee reporting to the shop at the end of the regular workday shall be at the shop by 4:30 p.m. or the applicable overtime rate shall apply.

(e) Employees shall be required to report to an assigned area designated by the Employer. All Employees that are part of an assigned crew shall report to the same assignment area which shall be a job shack or a company owned gang box. This location shall not be more that 1,000' from the parking area. If the parking area is further than 1000 feet from the assignment area, the employee will walk in on his/her time and will walk out on the employer's time. The applicable rate of pay shall apply.

(f) When directed by the owner or General Contractor, an adjusted workday of 8 ½ continuous hours (unpaid lunch) may be performed Monday through Friday, excluding Saturdays, Sundays and Holidays.

The adjusted workday shall be eight (8) hours of work between the hours of 4:30 p.m. and 8:00 a.m. Workmen shall be paid for a minimum of eight (8) hours for the shift regardless of hours worked (unless time off is requested by the Employee). The thirty-minute lunch period is to be taken at the end of four (4) hours of work. The starting time of the adjusted workday may be adjusted with the approval of the Union.

The workmen on this shift shall receive the regular hourly rate plus 25% of the basic Journeyman Wireman rate for each hour paid.

Overtime before or after the shift shall be paid at the double (2x) time rate.

(g) The employer, by mutual consent of the Union, may institute a work week consisting of four (4) consecutive ten (10) hour days between the hours of 7:00 a.m. and 6:00 p.m., Monday through Thursday, with one-half hour allowed for a lunch period. Friday may be used as a make-up day, and, if utilized, a minimum of eight (8) hours must be scheduled. After ten (10) hours in a workday, overtime shall be paid at a rate of double (2x) time the regular rate of pay. The first eight (8) hours worked, after forty (40) hours of work at the regular rate of pay, shall be paid at a rate of one and one-half (1 ½) times the regular rate of pay. Any subsequent hours worked shall be paid at a rate of double (2x) time the regular rate of pay. Employees will not be penalized or otherwise discriminated against for refusing to work the make-up day.

## 3.02 MEAL PERIOD

(a) When overtime is worked <u>in conjunction</u> with the normal working hours, as set forth in 3.01, the Employee shall receive a one-half (1/2) hour meal period with pay, at the appropriate rate, after the first two (2) hours of <u>cumulative</u> overtime if work is to continue. Thereafter, a paid meal period of one-half (1/2) hour shall be provided every four (4) hours if work is to continue.

(b) When overtime is worked that is outside of, and <u>not in conjunction</u> with the normal working hours as set forth in 3.01, a meal period of thirty (30) minutes shall occur every four (4) hours if work is to continue. The first designated meal period shall be on the employees time provided the

Employee was given at least two (2) hours prior notice to report for work. Subsequent meal periods <u>shall be paid</u> at the appropriate rate.

(c) When meals are not readily available, the Employer shall allow one member of the crew time to obtain meals for the Employees prior to the meal period, providing the Employee did not receive notification of the overtime two (2) hours prior to reporting to work. Employees will be responsible for food expenses.

<u>Clarification</u>: Insofar as 3.02(a), (b) and (c) are concerned, time worked on a Saturday, Sunday, or a Holiday shall be the same as time worked on a normal workday.
<u>Definition</u>: "conjunction with" is an unbroken continuation either before or after the normal working hours.

## 3.03 OVERTIME REPORTING
No overtime work shall be performed without prior notification to the Business Manager or Steward by the Employer or Employee. The Employer or Employee shall notify the Business Manager or Steward prior to starting all overtime work naming men and job. At the completion of the overtime, the Business Manger or his office shall be notified that overtime is completed and state the length of the overtime. (831) 633-2311

## 3.04 WAGES
(a) Trade Classifications shall be: Journeyman Wireman, Journeyman Technician and Cable Splicer and shall be paid in accordance with the following wage pages.

(b) <u>Zone Differential</u>
    (1) When Employees are directed by the Employer to report to the Employer's shop, the Employer shall furnish transportation and pay for traveling time from shop to job, job to job, and job to shop.

    (2) Zone A: Employees may be required to report directly to any job within Zone A, the free zone, on their own time and in their own transportation, at no cost to the Employer, at the regular starting time and shall work eight (8) hours on the job. Any Employer may also request the Union to dispatch applicants for employment under the referral procedure directly to any job within the free zone (Zone A), on their own and in their own transportation at no cost to the Employer.

    (3) Zone B: Employees may be required to report directly to any job outside the free reporting zone listed above at the regular starting time, on their own time or in their own transportation, and shall work eight (8) hours on the job. Employees shall be required to report directly in their own transportation to only one (1) job per day. Employees reporting to such jobs shall be paid the following zone differential in addition to their normal wage rate.

        (a) Zone B Differential – 10% of the Basic Journeyman Rate for jobs located outside of Zone A.

        (b) Employees required by the Employer to remain away from home overnight shall receive eighty-five dollars ($85.00) per day, per diem.

**DEFINITIONS OF ZONE A AND B:**

Zone A: All of Santa Cruz County, Monterey and San Benito Counties within twenty-five (25) air-miles of Highway 1 and Dolan Road in Moss Landing, and an area extending five (5) miles east and west of Highway 101 South to the San Luis Obispo County Line.

Zone B: Any area outside of Zone A described above.

(4) Employers who do not have an established shop within the area covered by this Agreement shall abide by the same travel requirement as other Employers performing work under this Agreement.

(5) Time spent traveling in an Employer furnished vehicle prior to 8:00 a.m. and after 4:30 p.m. shall not be an expense to the Employer, provided the traveling is from the Employee's home to the job and from the job to the Employee's home.

(6) The Employer shall provide transportation for all shop tools and materials.

Reference Article 3.04 (b) Zone Differential Hourly Rate:    Zone B

| | |
|---|---|
| Journeyman | **$37.85** |
| Foreman | **$42.15** |
| General Foreman | **$46.45** |
| Cable Splicing | **$42.15** |
| Jry. Tech. | **$37.85** |
| Jry Welding | **$41.29** |

Reference Article 3.04 (b) - $85.00 per day, per diem

NOTE: Health & Welfare, Education & Training, LMCC and Pension are paid on hours PAID, not hours worked. (Must reflect the overtime hours)

## MONTEREY-SAN BENITO-SANTA CRUZ COUNTIES
## IBEW LOCAL 234 INSIDE AGREEMENT

3.04 (a) Continued WAGES - The minimum rate of wages shall be:

| | Classification | Hrly Rate | H&W | Pens Fund | Ed & Trng | LMCC | NEBF | AMF | Total Cost |
|---|---|---|---|---|---|---|---|---|---|
| 5/29/2006 thru | Journeyman | $34.41 | $8.40 | $8.49 | $0.60 | $0.20 | 3.00% | 0.75% | $53.39 |
| 12/24/2006 | Foreman 12.5% above Jry | $38.71 | $8.40 | $8.49 | $0.60 | $0.20 | 3.00% | 0.75% | $57.85 |
| | Gen. Foreman 25% above Jry | $43.01 | $8.40 | $8.49 | $0.60 | $0.20 | 3.00% | 0.75% | $62.31 |
| | Jry. Wireman while splicing cable | $38.71 | $8.40 | $8.49 | $0.60 | $0.20 | 3.00% | 0.75% | $57.85 |
| | Jry. Tech | $34.41 | $8.40 | $8.49 | $0.60 | $0.20 | 3.00% | 0.75% | $53.39 |
| | Jry. Wireman while welding | $37.35 | $8.40 | $8.49 | $0.60 | $0.20 | 3.00% | 0.75% | $56.96 |

## APPRENTICES

### APPRENTICE WIREMAN  - TEN (10) PERIODS

| PERIOD | WAGES |
|--------|-------|
| 1ST | 45% of JW Rate |
| 2ND | 47% of JW Rate |
| 3RD | 55% of JW Rate |
| 4TH | 60% of JW Rate |
| 5TH | 65% of JW Rate |
| 6TH | 70% of JW Rate |
| 7TH | 75% of JW Rate |
| 8TH | 80% of JW Rate |
| 9TH | 85% of JW Rate |
| 10TH | 90% of JW Rate |
| Completion | 100% |

| Hrly Classification | Rate | H&W | Pens Fund | Ed & Trng | LMCC | NEBF | AMF | Total Cost |
|---------------------|------|-----|-----------|-----------|------|------|-----|-----------|
| 1st Period @ 45% | $15.48 | $8.40 | $0.00 | $0.60 | $0.20 | 3.00% | 0.75% | $25.26 |
| 2nd Period @ 47% | $16.17 | $8.40 | $0.00 | $0.60 | $0.20 | 3.00% | 0.75% | $25.98 |
| 3rd Period @ 55% | $18.93 | $8.40 | $1.17 | $0.60 | $0.20 | 3.00% | 0.75% | $30.01 |
| 4th Period @ 60% | $20.65 | $8.40 | $1.68 | $0.60 | $0.20 | 3.00% | 0.75% | $32.30 |
| 5th Period @ 65% | $22.37 | $8.40 | $2.76 | $0.60 | $0.20 | 3.00% | 0.75% | $35.17 |
| 6th Period @ 70% | $24.09 | $8.40 | $4.16 | $0.60 | $0.20 | 3.00% | 0.75% | $38.35 |
| 7th Period @ 75% | $25.81 | $8.40 | $4.78 | $0.60 | $0.20 | 3.00% | 0.75% | $40.75 |
| 8th Period @ 80% | $27.53 | $8.40 | $5.43 | $0.60 | $0.20 | 3.00% | 0.75% | $43.20 |
| 9th Period @ 85% | $29.25 | $8.40 | $6.49 | $0.60 | $0.20 | 3.00% | 0.75% | $46.04 |
| 10th Period @ 90% | $30.97 | $8.40 | $7.64 | $0.60 | $0.20 | 3.00% | 0.75% | $48.97 |

Scheduled Increases:
Effective 12/25/06, increase of $1.15 to be distributed at the direction of the Local Union.
Effective 05/28/07, increase of $1.00 to be distributed at the direction of the Local Union.
Effective 12/24/07, increase of $1.15 to be distributed at the direction of the Local Union.

## 3.05 STARTING TIME ADJUSTMENT

(a) The shop or job work day may be adjusted by two (2) hours from 3.01(a) with the half-hour (1/2) lunch break occurring four (4) hours from the start of the work day, after 24 hours advanced written notice has been submitted to the Union.

(b) When the starting time is adjusted, other affected areas of the Agreement shall also be adjusted in keeping with the intent of the original contract language.

## 3.06 PAYDAY – TERMINATION SLIPS

(a) Wages shall be paid weekly, the workweek shall end at 12:00 midnight on Sunday, and wages shall be paid before 4:30 p.m. on Wednesday.  Not more than three (3) days wages shall be withheld at any time.  Should payday fall on a day that the Employees do not work or only work part of the day, it shall be the responsibility of the Employer to have the paychecks available at the normal place of payment no later than 4:30 p.m. on the regular payday.  The payroll check stub, or accompanying statement, shall contain the complete payroll date – month, day, year, including company name and home office city, all deductions itemized and gross and net wages.

(b) **LAYOFF** Any employee laid off or discharged by the Employer shall be paid his wages immediately and shall receive a termination slip.

(c)    (1) If an Employee provides notice, three-business day's prior of his intention to quit; the Employee is entitled to his wages at the time of quitting.

(2) In the event an Employee quits without prior notification, the Employer shall pay all wages due within three business days or the next payday whichever occurs first. The check shall be mailed to the address provided by the Employee unless other arrangements are agreed upon with the Employee. and an authorized office Employee; however, the intent of this section shall not be abrogated or ignored.

(d)   If the terms of section 3.06 (a), (b), or (c) are not complied with, waiting time at the regular rate of pay shall be charged until payment is made; however waiting time shall not exceed eight (8) hours in any one twenty-four (24) hour period. When an employee is still employed or has returned to work or is drawing unemployment, a penalty of $50 per day shall be assessed.

(e)   The discharged Employee(s) shall check in all Employer's tools and materials and shall be allowed one-half (1/2) hour to pick up his own tools on Employer's time, and then shall leave the job site immediately.

## 3.07 DUES CHECK OFF

The Employer agrees to deduct and forward to the Financial Secretary of the Local Union, upon receipt of a voluntary written authorization, the additional working dues from the pay of each IBEW member. The amount to be deducted shall be the amount specified in the approved Local Union Bylaws. Such amount shall be certified to the Employer by the Local Union upon request by the Employer.

## 3.08 GENERAL PROVISIONS

(a) LUNCH PERIODS WORKED Employees required to work during any regular lunch period shall receive the appropriate overtime rate for that period and then be granted a thirty (30) minute lunch period as soon as practical thereafter.
Exception to the above shall be as follows:

> Two (2) Employees, one (1) of which may be an Apprentice, may have their meal period scheduled up to one-half (1/2) hour early in order to cover work to be performed during the regular scheduled meal period.

(b) UNSCHEDULED WORK Employees called to report for unscheduled work four (4) or more hours before the normal start time, shall be paid at the double time rate for all work performed on that call, on that day. A minimum of two hours at the double time rate shall be paid.

(c) Employees required to continue working beyond the regular workday, past 12:30 a.m. shall have at least an eight (8) hour break before returning to work.

(d) OVERTIME PREFERENCE When it is necessary to work overtime on any job covered by this Agreement, Employees working on the job shall be given first preference, except where an Employee with special skills or job knowledge is required, who shall be paid at the Foreman's rate.

(e) INJURIES – JOB RELATED When an Employee is injured on the job, and is required to leave the job to receive medical aid, his wages shall continue and he shall remain in the course and scope of employment until he returns to the job. is lodged in a hospital or is released to go home.

(f) **EMPLOYEES FIFTY (50) YEARS OLD OR OLDER** On all jobs requiring five (5) or more Journeymen, at least every fifth (5th) Journeyman, if available. shall be fifty (50) years of age or older.

**3.09 SCOPE**

Employees employed under the terms of this Agreement shall do all the construction, installation, cutting, fitting, binding and erection of electrical electronic work and all electrical electronic maintenance thereon, meggering, hy-potting, calibrating and setting of all meters, control devices, overloads, electronic devices, electronic systems, communication systems and all related control wiring, including the final running tests. This shall include the installation and maintenance of temporary wiring and the installation and maintenance of electrical lighting, heat, and power equipment. Welding, burning, brazing, bending, drilling and shaping for fabricating of materials used in connection with the installation and erection of electrical wiring and equipment shall be performed by Employees employed under the terms of this Agreement. All conduit, tubing and equipment shall be cut and fitted by Employees employed under the terms of this Agreement. It shall be understood and agreed that the scope of work covered by this Agreement shall cover all of the electrical and other related work included in the specification of each and every job.

When a contractor has knowledge that a portion of the electrical work covered under this Agreement is not included under his work to be performed, the contractor shall notify the Union.

**3.10 HOLIDAYS**

(a) All work performed on Sundays, and the following Holidays, days celebrated as such, or Building Trades Holidays shall be paid at double the straight rate of pay.

New Years' Day, January 1;
Martin Luther King, Jr.s' Birthday, observed third Monday in January;
Presidents' Day, the third Monday in February;
Memorial Day, the last Monday in May;
Fourth of July;
Labor Day, the first Monday in September;
Veterans' Day, November 11;
Thanksgiving Day, the fourth Thursday in November;
The day after Thanksgiving Day;
Christmas Day, December 25;

Any of the above designated holidays occurring on Sunday shall be observed on the following Monday. Any of the above-designated Holidays occurring on Saturday shall be observed the previous Friday. Double-time shall be paid for work performed on a Saturday that immediately follows a designated Holiday that is observed on a Friday.

(b) Two (2) additional days each year shall be selected by mutual agreement as designated "Off Days". Designated Off Days shall be paid at time and one-half the straight time rate. Selection of Off Days will be coordinated with other Holidays to make four-day weekends or align with Holidays with other Building Trades.

(c) **WORK PERFORMED ON FLOATING HOLIDAYS**. For Service and Maintenance Work (as defined below) Employers shall be allowed to have Employee(s) work on the "Designated OFF DAY" at the straight time rate of pay during the regular work hours provided the Employee does not work the following regular work day, otherwise the Employee shall be paid at time and one-half the straight time rate. The Employer shall notify the Union office in advance by leaving a message on the recorder or fax machine at the Union office.

Service and Maintenance Work shall be defined as trouble or service calls that are received to perform work that is necessary to maintain the operation of an existing electrical system.

**3.11 LABOR DAY**
No work shall be performed on Labor Day except in case of emergency and then only after notice is given to the Business Manager of the Union or the Union Office prior to the work being performed.

**3.12 SHOW UP PAY**
(a) **LAID OFF** Any Employee reporting for work and being laid off, or any Employee not having been notified the day prior to a layoff, shall receive not less than four (4) hours wages.

(b) **BAD WEATHER** When Employees are directed to report to the shop or job and do not start work due to weather conditions or other causes beyond their control, they shall receive two (2) hours show-up time unless notified between a minimum of one hour prior to the start of the day to be worked. If an Employee is not available for notification (has not provided a telephone number where he can be reached, or cannot be reached at the number), the Employer shall notify the Union office; such call shall constitute notification. When Employees report to the shop or job and start work, but due to inclement weather conditions or other causes beyond their control are required to cease working, they shall receive at a minimum two (2) hours of pay and benefits.

In lieu of the notification referred to above, the Employer may provide a toll-free message number, staffed by a live, identifiable person, for Employees to call and receive instructions at least two (2) hours before they are required to report for work.

(c) **DISPATCH** If an Employer rejects an applicant for employment who has no adverse employment history with that Employer and is otherwise prepared to commence work in a timely manner and within normal industry requirements, the applicant is entitled to a reporting expense allowance in the amount of two (2) hours straight time pay. If this expense cannot be paid at the time of rejection, it must be postmarked in the mail to the applicant at the Local Union office within twenty-four (24) hours unless mutually agreed that other arrangements have been made between the Employer and the applicant. This section shall not apply if there is on file with the Local Union office a current termination slip that this applicant is ineligible for rehire, as per Section 3.06(b).

**3.13 PREVAILING RATE WORK**
(a) Labor agrees to provide protection for all prevailing wage jobs (both federal and state) bid after the date of adoption, by agreeing to perform the work at the rate established in this Agreement in effect at the time the job was bid, and to continue to cover the work at that rate until the job is completed or for a maximum of two (2) years, whichever comes first.

Management assumes the responsibility to monitor the wage rates being advertised on all prevailing rate jobs and to work with Labor to assure that these advertised rates are correct.

(b) **Protection of Prevailing Wage jobs when the prevailing wage goes down**. If during the term of this Agreement, the Davis-Bacon prevailing wage rate is lowered as the result of a wage survey causing the lowering of such prevailing wage rate, subject to the requirements set forth below, all signatory contractors shall be permitted to bid future federal public works projects, not already awarded or bid, at the lower prevailing wage rate. If during the term of this Agreement, the state prevailing wage rate is lowered as the result of a wage survey causing the lowering of such prevailing wage rate, subject to the requirements set forth below, all signatory contractors shall be permitted to bid future state public works projects, not already awarded or bid, at the lower wage rate. Before a contractor is permitted to pay less than the contractual wage rate as the result of a wage survey lowering the prevailing wage rate as described above, the contractor must: